McNUTT LAW GROUP LLP
SCOTT H. McNUTT (CSBN 104696)
SHANE J. MOSES (CSBN 250533)
188 The Embarcadero, Suite 800
San Francisco, California 94105
Telephone: (415) 995-8475
Facsimile: (415) 995-8487

LEE LAW OFFICES
MONIKA P. LEE (CSBN 117019)
1700 South El Camino Real, Suite 450
San Mateo, California 94402
Telephone: (650) 212 3400
Facsimile: (650) 212 3404

Attorneys for Plaintiffs William Bergman, Richard and Catherine Tiesso as Trustees
of the Tiesso Revocable Trust, and John C. Sherwood

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>CMR MORTGAGE FUND, LLC,<br>CMR MORTGAGE FUND II, LLC,<br>CMR MORTGAGE FUND III, LLC,<br><br>Debtors.<br><br>WILLIAM BERGMAN, RICHARD and CATHERINE TIESSO as Trustees of the TIESSO REVOCABLE TRUST, JOHN C. SHERWOOD,  individually and as members of the OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS and on behalf of a class consisting of the members of CMR Mortgage Fund I, LLC CMR Mortgage Fund II, LLC, CMR Mortgage Fund III, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>CALIFORNIA MORTGAGE AND REALTY, INC., DAVID CHOO,<br><br>Defendants. | Case Nos.       08-32220 TEC<br><br>(Substantively Consolidated with Case Nos.09-30788 TEC and 09-30802 TEC)<br>Chapter 11<br><br>Adv No.    10-03107<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER PRELIMINARILY APPROVING PROPOSED SETTLEMENT, PRELIMINARILY CERTIFYING SETTLEMENT CLASS, APPROVING FORM AND DISSEMINATION OF CLASS NOTICE, AND SETTING DATE FOR HEARING ON FINAL APPROVAL**<br><br>Judge:      Hon. Thomas E. Carlson<br>Date:       June 15, 2012<br>Time:       11:00 a.m.<br>Place:      235 Pine Street<br>               Courtroom 23<br>               San Francisco, CA 94104<br>Judge:      Hon. Thomas E. Carlson<br><br>Complaint filed: June 25, 2010 |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................... 1

II.   STATEMENT OF FACTS ....................................................................................... 3

      A.   The Debtor Funds And The Bankruptcy Cases ............................................. 3

      B.   Class Members' Losses And Resulting Claims ............................................. 4

      C.   Assets Of Defendants Available To Pay Claims Of Class Members ............ 5

            1.   David Choo's Personal Assets And Liabilities ................................. 6

            2.   CMRI Assets And Liabilities ............................................................ 6

            3.   Insurance ........................................................................................... 7

III.  THE COURT IS AUTHORIZED TO GRANT PRELIMINARY APPROVAL OF
      THE SETTLEMENT AND CERTIFICATION OF A MANDATORY CLASS ................. 8

      A.   Approval Of A Class Action Settlement Is A Two-Step Process ................. 8

      B.   The Court Should Preliminarily Approve the Settlement ............................. 9

            1.   The Settlement Meets The Standard For Approval ....................... 10

                 (a)   The Settlement Is The Product Of Serious, Informed, Non-
                       Collusive Negotiations ...................................................... 10

                 (b)   The Settlement Has No Obvious Deficiencies .................. 10

                 (c)   The Settlement Does Not Improperly Grant Preferential
                       Treatment .......................................................................... 11

                 (d)   The Settlement Falls Within The Range Of Possible Approval ......... 11

                       (i)    Expected Recovery Balanced Against Value Of
                              Settlement Offer ...................................................... 11

                       (ii)   Fundamental Fairness And Reasonableness ........... 12

      C.   Authority Of Bankruptcy Court To Certify The Class ............................... 13

            The proposed Class consists of ................................................................ 14

            2.   Certification of a Class Under Rule 23(b)(1) is Appropriate ....... 16

            3.   The Court Should Certify A Mandatory Limited Fund Class ....... 18

Case: 10-03107    Doc# 32    Filed: 05/18/12    Entered: 05/18/12 18:47:38    Page 2 of
32

MPA ISO PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

(a)     Defendants Have A Negative Net Worth And Insurance Proceeds Are Limited ........................................................................ 18

(b)     The Limited Fund Is Insufficient To Satisfy All Claimants ............... 19

(c)     The Fund Is Devoted Entirely To Paying The Claims ...................... 20

(d)     The Claimants Are Treated Equitably Within The Proposed Class .......................................................................................... 21

         (i)     Allocation Between Class And Debtors' Estates ................... 21

         (ii)     Allocation Within The Class .................................................. 21

         (iii)     Utilization Of Funds Allocated To The Estate ...................... 22

(e)     The Bankruptcy Setting and the Fact That Plaintiffs' Claims Are Also Brought Under Rule 23.1 Support Certification of A Mandatory Class .......................................................................... 22

IV.     THE PROPOSED CLASS NOTICE SHOULD BE APPROVED ....................................... 24

     A.     The Proposed Class Notice Will Provide Adequate Notice Of The Class Settlement To All Class Members .............................................. 24

     B.     Notice Of The Settlement Should Be Approved Pursuant To Rule 23.1 .................. 24

V.     THE COURT SHOULD ISSUE AN ORDER STAYING OTHER PROCEEDINGS PENDING THE FAIRNESS HEARING .......................................................................... 25

VI.     CONCLUSION .......................................................................................................... 26

Case: 10-03107     Doc# 32     Filed: 05/18/12     Entered: 05/18/12 18:47:38     Page 3 of 32

MPA ISO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

# TABLE OF AUTHORITIES

Page

## CASES

Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)...................................................... 14

Benchic v. Century Entertainment Corp., 25 B.R. 502 (Bankr. S.D. Ohio 1982) ............................ 13

Devlin v. Scardelletti, 536 U.S. 1 (2002) ................................................................. 24

Dillard v. City of Foley, 926 F. Supp. 1053 (M.D. Ala. 1995) .............................................. 24

Eisen v. Carlisle & Jacquelin, 417 U.S. 156 (1974)........................................................ 14

FDIC v. Alshuler, 92 F.3d 1503 (9th Cir. 1996)............................................................ 12

Gottlieb v. Wiles, 11 F.3d 1004 (10th Cir. 1993) ..................................................... 23, 24

Green v. Occidental Petroleum Corp., 541 F.2d 1335 (9th Cir. 1976) ....................................... 20

Guffanti v. National Surety Co., 196 N.Y. 452 (N.Y. 1909) ................................................ 20

Hanlon v. Chrysler, 150 F.3d 1011 (9th Cir. 1998) ....................................... 8, 12, 15, 25

Hochstadt v. Boston Scientific Corp., 708 F. Supp. 2d 95 (D. Mass. 2010).................................. 22

In re Bernard L. Madoff Inv. Sec., LLC, 440 B.R. 423 (Bankr. S.D.N.Y. 2010)............................... 25

In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation, 691 F.2d
        1335 (9th Cir. 1982)................................................................................ 14

In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285 (2nd Cir. 1992) ............................... 12, 13

In re Katrina Canal Breaches Consol. Litig., 263 F.R.D. 340 (E.D. La. 2009) ......................... 10, 20

In re Kirschner Medical Corp. Sec. Litigation, 139 F.R.D. 74 (D. Md. 1991) ............................... 14

In re Northern Dist. of California "Dalkon Shield" IUD Products Liability Litigation, 526 F.
        Supp. 887 (N.D. Cal. 1981)..................................................................... 17, 20

In re Syncor Erisa Litigation, 227 F.R.D. 338 (C.D. Cal. 2005)............................................ 22

In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................. 10, 11

In re Touch America Holdings, Inc. v. Greevey, 40 B.R. 107 (Bankr. D. Del. 2009)......................... 13

In re Traffic Executive Ass'n E.R.R.s v. Long Island R.R. Co., 627 F.2d 631 (2d Cir. 1980) .......... 8

In re Victor Technologies Sec. Litigation, 102 F.R.D. 53 (N.D. Cal. 1984) ............................... 16

Keith v. Volpe, 118 F.3d 1386 (9th Cir.1997) ........................................................... 25

1  Linney v. Cellular Alaska Pshp., 151 F.3d 1234 (9th Cir. 1998)................................................. 12, 13

2  Lockwood Motors v. General Motors Corp., 162 F.R.D. 569 (D. Minn. 1995) ............................. 14

3  Madison Assocs. v. Baldante (In re Madison Assocs.), 183 B.R. 206 (Bankr. C.D. Cal. 1995) ....... 15

4  Mertens v. Kaiser Steel Retirement Plan, 744 F. Supp. 917 (N.D. Cal. 1990) ................................. 23

5  Oakland Raiders v. National Football League, 131 Cal. App. 4th 621 (Cal. App. 2005)............ 21, 23

6  Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615 (9th Cir. 1982)........ 8, 12

7  Ortiz v. Fibreboard, 527 U.S. 815 (1999) ................................................................................. passim

8  Pareto v. FCIC, 139 F.3d 696 (9th. Cir. 1998) ............................................................................... 23

9  Powers v. Eichen, 229 F.3d 1249 (9th Cir. 2000) ........................................................................... 23

10  Rosario v. Livaditis, 963 F.2d 1013 (7th Cir. 1992) ....................................................................... 15

11  Sax v. World Wide Press, Inc., 809 F.2d 610 (9th Cir. 1987) ........................................................ 13

12  Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.), 502 F.3d
       1086 (9th Cir.2007) ................................................................................................................... 25

13
   Torrisi v. Tucson Electric Power Co., 8 F.3d 1370 (9th Cir. 1993)........................................... 12, 13

14
   Vasquez v. Coast Valley Roofing, Inc., 670 F. Supp. 2d 1114 (E.D. Cal. 2009) ................. 10, 11, 12

15

16  **STATUTES**

17  11 U.S.C. § 105(a)............................................................................................................................. 25

18  11 U.S.C. §§ 524, 1123 ..................................................................................................................... 23

19  28 U.S.C. App., p. 696 ...................................................................................................................... 18

20  All Writs Act, 28 U.S.C. § 1651 ....................................................................................................... 25

21  Anti-Injunction Act, 28 U.S.C. § 2283 ............................................................................................. 25

22  Cal. Corp. Code § 17500.................................................................................................................... 15

23  Fed. R. Bankr. P. 7023 .................................................................................................................... 1, 8

24  Fed. R. Bankr. P. 7023(a) ........................................................................................................ 2, 14, 16

25  Fed. R. Bankr. P. 7023(b)(1)..................................................................................................... 2, 16, 17

26  Fed. R. Bankr. P. 7023(c)(2)(A)........................................................................................................ 24

27  Fed. R. Bankr. P. 7023(e)(1) ............................................................................................................. 24

28  Fed. R. Bankr. P. 7023.1 ................................................................................................................. 1, 8

1    Fed. R. Bankr. P. 7023.1(a) ........................................................................... 2

2    Fed. R. Bankr. P. 7023.1(c) ....................................................................... 8, 24

3    Fed. R. Bankr. P. 9019 ................................................................................. 3

4    Fed. R. Civ. P. 23 ................................................................................... 1, 24

5    Fed. R. Civ. P. 23(b) .................................................................................. 14

6    Fed. R. Civ. P. 23(b)(1) ......................................................................... 16, 17

7    Fed. R. Civ. P. 23(b)(1)(B) ........................................................ 20, 22, 23, 24

8    Fed. R. Civ. P. 23(e) .................................................................................. 24

9    Fed. R. Civ. P. 23.1 ............................................................................. passim

10   Fed. R. Civ. P. 23.1(c) ............................................................................... 24

11   Fed. R. Civ. P. 7023(b)(1)(B) ..................................................................... 18

12

13 **OTHER AUTHORITIES**

14   4 Newberg On Class Actions § 11:25 at 38- 39 (4th ed. 2008) ......................... 8

15   Fed. R. Civ. P., Notes of Adversary Committee on 1966 Amendments ............. 18

16   Manual For Complex Litigation (Fourth) § 13.14 ........................................... 8

17   Manual For Complex Litigation (Fourth) § 21.133 .......................................... 9

18   Manual For Complex Litigation (Fourth) § 21.61 (2007) ................................. 8

     Manual For Complex Litigation (Fourth) § 21.632 .......................................... 8

19

20

21

22

23

24

25

26

27

28

Plaintiffs William Bergman, Richard and Catherine Tiesso as Trustees of the Tiesso Revocable Trust, and John C. Sherwood, ("Named Plaintiffs" or "Plaintiffs"), individually and on behalf of a class consisting of the members of CMR Mortgage Fund I, LLC, CMR Mortgage Fund II, LLC, CMR Mortgage Fund III, LLC hereby submit the following memorandum of points and authorities in support of their MOTION FOR AN ORDER PRELIMINARILY APPROVING PROPOSED SETTLEMENT, PRELIMINARILY CERTIFYING SETTLEMENT CLASS, APPROVING FORM AND DISSEMINATION OF CLASS NOTICE, AND SETTING DATE FOR HEARING ON FINAL APPROVAL (the "Motion").

# I. INTRODUCTION

The Named Plaintiffs filed this class and derivative action (the "Action"), on behalf of themselves and others similarly situated, on June 25, 2010. They are members of CMR Mortgage Fund, LLC ("Fund I"), CMR Mortgage Fund II, LLC ("Fund II"), and CMR Mortgage Fund III, LLC ("Fund III") (collectively, the "Funds" or "Debtor Funds") and are members of the Official Committee of Equity Security Holders appointed in the Chapter 11 cases of the Debtor Funds by the United States Trustee for the Northern District of California (the "Committee")[1].

The defendants are the manager of the Debtor Funds, California Mortgage And Realty, Inc. ("CMRI"), and its principal, David Choo ("Choo") (both parties, collectively "Defendants").

The claims in the Action are brought to recover damages incurred by members of the Debtor Funds arising out of Defendants' conduct alleged therein, regardless of whether such damages derive from injury to the Debtor Funds or are the result of individual injuries to Fund members. Because of the dual nature of the claims, both Rule 23 and Rule 23.1 are implicated.[2] The First Amended Complaint (the "FAC") asserts causes of action against CMRI and Choo for Breach of

---

[1] Because of the conflict of interest between the Debtor Funds and their manager, the Equity Committee was authorized by this Court's Order signed on January 29, 2010 (the "Authorizing Order"), to pursue all avoiding actions, claims, and litigation against any insider or affiliate of an insider of the Funds and/or CMRI. While the Committee fully supports this Action, it is not a party.

[2] Federal Rules of Civil Procedure 23 (class actions) and 23.1 (derivative actions), are incorporated in their entirety into Federal Rules of Bankruptcy Procedure 7023 and 7023.1, respectively. The Civil and Bankruptcy rule numeric designations are used interchangeably herein.

1  Contract, Breach of Fiduciary Duty, Negligent Misrepresentation, Professional Negligence,

2  Intentional Misrepresentation, and Constructive Trust, as more fully set forth in the FAC.

3      By this motion, Plaintiffs seek to certify a settlement class consisting of all members of the

4  CMR Debtor Funds as of April 30, 2008 (the "Class"), and to obtain approval of a global settlement

5  (the "Settlement") of all claims asserted in the Action as well as other actual and potential claims

6  arising out of the Defendants' management of the Debtor Funds. Plaintiffs also seek an order,

7  pending a final hearing, staying all proceedings against Defendants by individual members of the

8  proposed Class.

9      The Class is coextensive with the class of equity members of the CMR Funds' bankruptcy

10  proceeding.  The Class meets all of the class certification requirements under Rule 7023(a) of

11  "numerosity," "commonality," "typicality," and "adequacy of representation." The Named Plaintiffs

12  also meet the derivative action requirements of Rule 7023.1(a), in that they "fairly and adequately

13  represent the interests of shareholders or members who are similarly situated in enforcing the rights

14  of the corporation or association."

15      Plaintiffs request that the Class be certified as a mandatory "limited fund" class under Rule

16  7023(b)(1) because the only assets available to settle the claims against Defendants are the proceeds

17  of two insurance policies whose combined limits fall far short of all the losses asserted.  Requiring

18  that all members of the Debtor Funds be bound by a settlement that allocates these limited funds to

19  the estate and to each member based on the size of his or her losses is the only fair and equitable

20  way to address this situation.

21      The investigation and negotiations that resulted in the proposed Settlement began soon after

22  this Action was filed.  Defendants are represented by a team of Orrick Herrington lawyers who

23  vigorously have contested Plaintiffs' claims.  Plaintiffs' counsel thoroughly investigated

24  Defendants' financial status and demanded that no effort be spared to obtain insurer contributions to

25  the Settlement. On April 14, 2011, 10 months after filing of the complaint, and after the Debtor

26  Funds in possession failed to obtain approval for a Plan of Reorganization, the Court appointed

27  Richard M. Kipperman as trustee to oversee the assets of the estate (the "Trustee"). The Trustee did

28  not join this Action or object to it, and did not seek to modify the Authorizing Order, and the

1 Plaintiffs have continued to prosecute this Action as originally constituted. While the Trustee and

2 the Committee are not parties to the Action, they are parties to the Settlement and have

3 independently evaluated it.

4 The Settlement is a global settlement, which will (1) resolve all claims between the Debtor

5 Funds and their members, on the one hand, and the manager of the Debtor Funds and its principal,

6 David Choo, on the other hand; (2) provide initial payments to all Class members; (3) provide

7 substantial funds to the Trustee that will help him to maximize the potential recovery by Fund

8 members from the sale of Fund assets; and (4) allow the Debtors' Estate and Fund members to share

9 in future profits earned by the Defendants, should there be any.

10 The Settlement provides the best available recovery to the Class Members and Debtors'

11 Estate, and allows this recovery to be equitably distributed for the benefit of all Fund members.

12 Consequently, it should be approved, pending a final fairness hearing (the "Fairness Hearing") after

13 notice to all Class Members and approval of the settlement pursuant to Rule 9019[3].

## II. STATEMENT OF FACTS

15 A. <u>The Debtor Funds And The Bankruptcy Cases</u>

16 The Debtor Funds were formed for the purpose of making or investing in loans secured by

17 deeds of trust primarily on California real estate, both commercial and residential. CMRI formed

18 Fund I in 2000, and subsequently formed Fund II in 2003 and Fund III in 2005. Pursuant to the

19 respective operating agreements between CMRI and each Debtor Fund (the "Operating

20 Agreements"), CMRI managed each Fund, and all powers of each Fund were exercised by or under

21 the direction of CMRI. CMRI selected, underwrote and serviced all Fund loans.

22 In 2008 and 2009, CMRI caused the Debtor Funds to file the Chapter 11 bankruptcy cases

23 currently pending before this Court. Plaintiffs allege that these filings were the result of

24 Defendants' mismanagement and failure to carry out their duties to Plaintiffs and the Debtor Funds

25 to make prudent and conservative loans, and their refusal to adhere to their contractual obligations

---

[3] In order to comply with the requirements of Rule 9019, the Plaintiffs anticipate that a motion seeking approval of the Settlement Agreement pursuant to Rule 9019 will be filed in the Chapter 11 case of the Debtor Funds, to be heard in conjunction with the Fairness Hearing.

1  and to industry standards in their management of the Funds, underwriting of loans, and performance

2  of professional services for the benefit of Plaintiffs and the Funds.

3       On October 5, 2010, this Court approved the EQUITY COMMITTEE AND DEBTORS' JOINT PLAN

4  OF REORGANIZATION DATED JUNE 24, 2010 (the "Plan").  Eventually, however, despite extensive

5  efforts, financing could not be obtained to support the Plan. In consequence, the Court determined

6  that the Plan could not be implemented and directed the appointment of Richard M. Kipperman as

7  the Chapter 11 Trustee for the CMR cases.

8       The Plan provided that any assets recovered for distribution to the Fund members be

9  allocated among members according to a schedule approved by this Court (the "Distribution

10  Schedule"), which is attached at Exhibit G to the DISCLOSURE STATEMENT FOR EQUITY COMMITTEE

11  AND DEBTORS' JOINT PLAN OF REORGANIZATION DATED JUNE 24, 2010, filed June 24, 2010 (the

12  "Disclosure Statement").  Plaintiffs propose that the approved Distribution Schedule be used in

13  connection with the allocation of the settlement funds.

14  **B.**   **Class Members' Losses And Resulting Claims**

15       As of April 30, 2008, all three Funds had ceased accepting investments and making

16  distributions.  At the time, Fund I had 362 member accounts totaling $41,932,813, Fund II had 889

17  accounts totaling $88,438,739, and Fund III had 711 accounts totaling $56,020,498.  In total there

18  were 1,962 member accounts[4] valued at $186 million.  Plaintiffs have had no access to any portion

19  of these funds since April 2008.

20       The CHAPTER 11 TRUSTEE'S THIRD STATUS CONFERENCE STATEMENT, filed by the Trustee

21  on January 17, 2012 (the "Third Status Report"), states that it is unclear whether sufficient value can

22  be realized from the Debtors' real estate interests to provide a material return to investors. *See* Third

23  Status Report, Exhibit A (Analysis of Debtors' Real Estate Interests).  Thus, the members of the

24  Funds may have lost most or all of their contributions.

25       Prior to institution of the Action a few members of the proposed Class brought individual

26  
[4] The names and contact information for all of the members are known through the records of the

27  Debtor Funds.  Because membership in the Funds was limited to California residents, all members
initially resided in California, and most still do.

28  

Case: 10-03107   Doc# 32   Filed: 05/18/12   Entered: 05/18/12 18:43:38   Page 10 of
32

MPA ISO PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

1  actions in California state court.  The plaintiffs in these actions collectively seek damages of more

2  than $15 million, more than double the amount of insurance proceeds available for settlement. The

3  claims asserted in these actions arise out of the same facts and circumstances as the instant action

4  and, in large part, are based on the same legal theories.[5] This means, *inter alia*, that these individual

5  plaintiffs improperly seek to enforce claims that are derivative,[6] although they have neither

6  identified their claims as such nor proposed to benefit the Debtors' estate by their actions.

7       If these individual actions were allowed to proceed, and were successful even in part,

8  recovery by some of these state court plaintiffs would exhaust the available insurance coverage and

9  leave the majority of the Class members empty handed. More likely, however, the defense costs for

10  these multiple lawsuits would use up the limits of the insurance policies.  The policies are so-called

11  "wasting" policies, under which covered defense costs are deducted from the available policy limits.

12  As a result, neither the individual plaintiffs nor the remaining class members would recover

13  anything.

14  **C.**     **<u>Assets Of Defendants Available To Pay Claims Of Class Members</u>**

15       Plaintiffs undertook an extensive investigation of the financial situation of CMRI and Choo,

16  including Choo's personal property, bank accounts, retirement accounts, real estate holdings,

17  securities, and entities in which Choo holds an interest.  Plaintiffs requested that Choo make himself

18  available without the time limitations and objections involved in formal discovery, and Plaintiffs'

19  counsel conducted lengthy interviews with Choo over three different days.  Plaintiffs also requested

20  and received numerous financial documents, including tax returns, of Choo personally and of CMRI

21  for the purpose of corroborating the information Choo provided.  *See* DECLARATION OF MONIKA LEE

22  IN SUPPORT OF PLAINTIFFS' MOTION FOR CERTIFICATION OF CLASS AND FOR PRELIMINARY

23  ───────────────

[5] Plaintiffs are aware of the following actions: <u>Joseph Zadik v. California Mortgage and Realty, Inc.,

24  et al.</u>, San Francisco County Superior Court Case No. CGC-09-486094; <u>Strouzas v. Choo et al.</u>, San Francisco Superior Court Case No. CGC 09-491988; <u>McCarty v. Choo et al.</u>, San Francisco

25  Superior Court Case No. CGC 09-492051; and <u>Stevens v. California Mortage and Realty, Inc. et al.</u>, San Francisco Superior Court Case No. CGC 10-497123.

26  [6] This is in direct contravention of the Authorizing Order which designated the Equity Committee as

27  the party with the right to pursue such claims. Defendants successfully objected to the assertion of derivative claims in the <u>Stevens</u> action. See Lee Decl. Exh. B.

28

APPROVAL OF SETTLEMENT ("Lee Decl."), ¶¶ 8-9.

At Plaintiffs' request Choo provided a declaration under penalty of perjury setting forth the facts regarding the assets and liabilities of Choo and CMRI. *See* DECLARATION OF DAVID CHOO IN SUPPORT OF PRELIMINARY APPROVAL OF SETTLEMENT AND MOTION FOR CLASS CERTIFICATION ("Choo Decl."). The Choo Declaration confirms that Choo personally has a negative net worth and would not be able to pay from personal assets any judgment for damages, and that the same is true for CMRI. Immediately prior to the filing of this Motion, Choo provided a Supplemental Declaration ("Choo Supp. Decl.") explaining the loss of certain properties through foreclosure and confirming that Choo has not voluntarily transferred any of the properties that are the subject of the Settlement Agreement.

### 1. David Choo's Personal Assets And Liabilities

Choo received an annual salary from CMRI in 2010 and 2011 of $30,000 and $6,500, respectively, which he claims to have used to pay for CMRI expenses and to cover CMRI's operating losses; Choo states that he had no other sources of income in 2010 or 2011. Choo Decl. ¶ 16. Choo's non-real estate assets consist of approximately $294,000 in bank and IRA accounts, of which $100,000 has been pledged to the Trustee, as well as personal property having a reasonable resale value of approximately $115,000. Choo Decl. ¶ 15.

Most of the gains Choo earned prior to 2008 were invested in real properties which experienced significant losses in value during the last several years. Choo Decl. ¶ 18. With one exception all of Choo's personal real estate assets have been lost in foreclosure. Choo Decl. ¶¶ 20, 22-25; Choo Supp. Decl. ¶ 2. In addition, Choo is subject to numerous personal guarantees on tens of millions of dollars on defaulted loans, including a lawsuit seeking to enforce a guaranty on a $95 million obligation. Choo Decl. ¶¶ 20, 21, 26. Choo has personal accounts payable of approximately $600,000. Choo Decl. ¶ 17. Together with his real estate related liabilities and guarantees, Choo's liabilities greatly exceed his assets.

### 2. CMRI Assets And Liabilities

CMRI has no assets that would be available to pay claims. Choo Decl. ¶ 14. CMRI's income statement shows that, as of July 31, 2010, CMRI operated at a net loss of approximately $1.396

1   million for the preceding seven months of 2010.  Choo Decl. ¶ 9.  CMRI's 2008, 2009, and 2010 tax

2   returns show losses of approximately $3.706, $1.194, and $2.074 million, respectively. Choo Decl. ¶

3   10, Choo Supp. Decl. ¶ 3.   CMRI's financial situation has continued to decline since this case

4   began. CMRI's draft balance sheet as of December 30, 2010, shows a total asset value of $5.496

5   million (including already accrued claims against the Debtor Funds), offset by $18.483 million in

6   liabilities, for a negative net worth of close to $13 million. Choo Decl. ¶ 12.

7        CMRI currently generates very little income. While CMRI had over fifty full-time

8   employees in 2008 it now has four full-time employees and two part-time employees, and is

9   struggling to meet its payroll obligations. Choo Decl. ¶ 13.

10       3.   <u>Insurance</u>

11       In addition to the assets discussed above, CMRI and Choo are the insureds under two

12  insurance policies.  Indian Harbor Insurance Company issued a $5,000,000 Financial Services

13  Liability Policy (the "Indian Harbor Policy") and Certain Underwriters at Lloyd's, London

14  ("Lloyd's"), issued a Mortgage Bankers & Brokers Professional Liability Policy with limits of

15  $3,000,000 (the "Lloyd's Policy"). Lee Decl. ¶¶ 11, 12. There are no other insurance assets available

16  to cover the Plaintiffs' claims. Choo Decl. ¶ 31.

17       Both policies are "wasting" policies, *i.e.*, costs incurred by Choo and CMRI in defending

18  against claims that fall within the policies' coverage reduce the policy limits. Lee Decl. ¶ 9.  Indian

19  Harbor has been paying a team of attorneys at Orrick, Herrington and Sutcliffe to defend Choo and

20  CMRI against this action, as well as a number of state court actions brought by Fund members.  To

21  date, Indian Harbor has paid close to $1.4 million in defense costs out of the $5 million policy limit.

22  Lee Decl. ¶11.

23       Lloyd's refused to provide coverage under its policy and sued Choo and CMRI, seeking a

24  declaration that it has no obligation to pay for claims brought by the Fund members.  To avoid the

25  substantial uncertainty of coverage litigation, and to facilitate a global settlement, the Defendants

26  agreed to  a settlement with Lloyd's which will make $2,550,000 available.  Lee Decl. ¶ 12.

27

28

### III. THE COURT IS AUTHORIZED TO GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT AND CERTIFICATION OF A MANDATORY CLASS

This Court is authorized to certify a class and approve a class and derivative action settlement. A bankruptcy court has the same powers under Rule 7023 as other federal courts under Rule 23. *See* Madison Assoc. v. Baldante, 183 B.R. 206, 214. (Bankr. C.D. Cal. 1995) ("there is precedent for certification of class actions in bankruptcy cases"). Similarly, Federal Rule of Bankruptcy Procedure 7023.1 incorporates Rule 23.1 with respect to derivative actions.

### A. Approval Of A Class Action Settlement Is A Two-Step Process

Rule 7023(e) requires that a class action only be settled with the approval of the court. *See* Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 623-24 (9th Cir. 1982). To grant approval, the Court must determine whether the settlement is "fundamentally fair, adequate, and reasonable." Hanlon v. Chrysler, 150 F.3d 1011, 1026 (9th Cir. 1998). Similarly, settlement of a derivative action requires court approval under Rule 7023.1(c). Manual For Complex Litigation (Fourth) § 21.61 (2007).

Obtaining court approval of a class action settlement is a two-step process.[7] Id. § 21.632. "First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing." Id. § 13.14; *see also* 4 Newberg On Class Actions § 11:25 at 38- 39 (4th ed. 2008). At the preliminary approval stage, the court makes only "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and date of the final fairness hearing." Manual For Complex Litigation § 21.632. Because preliminary approval is merely a provisional step beginning the settlement approval process, any doubts are resolved in favor of preliminary approval. *See* In re Traffic Executive Ass'n E.R.R.s v. Long Island R.R. Co., 627 F.2d 631, 634 (2d Cir. 1980) (preliminary approval "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class

---

[7] This Court recently approved a class action settlement in In re Heller Ehrman, LLP, Case No. 08-32514 and related adversary proceeding, Adv. No. 09-03058. Judge Montali's Order granting preliminary approval in that matter was entered on April 1, 2010 (#55); the Final Order was entered on July 16, 2010 (#73).

1  members and hold a full-scale hearing as to its fairness"). Where the court has not previously

2  certified a class, a class for settlement purposes usually is provisionally certified at the time of

3  preliminary approval of the settlement.  Manual For Complex Litigation § 21.133.

4  **B.**     **The Court Should Preliminarily Approve the Settlement**

5      The CLASS AND DERIVATIVE ACTION SETTLEMENT AGREEMENT  ("Settlement Agreement") is

6  attached as Exhibit A to the Lee Declaration. Its major terms are as follows:

7      Settlement Fund:  Indian Harbor and Lloyd's will contribute a total of $4,056,862.78 directly

8          into a Settlement Account, to be administered by the Trustee according to the Plan of

9          Allocation.  Indian Harbor will reserve an amount of $2,115,000, the remaining limit of

10          liability under its policy, for covered defense costs.  Any of this reserved amount not actually

11          consumed by covered costs will also be contributed to the Settlement Account.

12      Plan of Allocation:  The Plan of Allocation provides for distribution of net settlement

13          proceeds[8] to individual class members, on account of "class claims," and to the Debtors'

14          estate, on account of claims deemed "derivative."[9]  Forty percent of net settlement proceeds

15          will be apportioned among the Fund members as provided by the Distribution Schedule and

16          distributed to Class members directly.  Sixty percent of net settlement proceeds will go the

17          Debtors' estate for administration by the Trustee according to applicable bankruptcy rules, so

18          as ultimately to maximize returns to Fund members from the sale of estate assets.

19      Waiver of Claims:  Choo and CMRI are waiving their claims against the Debtor Funds for

20          fees, repayment of loans, and other obligations with an asserted total value of $6,651,260.

21      Future Payments:  Choo and CMRI are obligated to pay to the Plaintiffs and Debtors' estates

22          10% of future profits, if any, from the development, hypothecation, rental, or sale of

23

---

24  [8] The net settlement proceeds will be determined by deducting from the Settlement Fund the
    attorneys' fees and costs the Court awards to Class Counsel, as well as certain amounts necessary to

25  satisfy any substantial contribution claims relating to the Action or associated claims against the
    Defendants that may be allowed by the Bankruptcy Court and costs associated with the creation and

26  administration of the Settlement Fund.

27  [9] This Court has made no determination regarding the existence or relative merit of the "class" and
    "derivative" claims assert by Plaintiffs.  *See* fn. 16, infra.

28

Case: 10-03107   Doc# 32   Filed: 05/18/12   Entered: 05/18/12 18:14:38   Page 15 of
32

1  properties in which Choo has an interest, over a period of ten years, for a potential total of

2  $21 million.

3  <u>Releases</u>:  Plaintiffs and the Debtors' estate release their claims against CMRI and Choo for

4  losses asserted in the Action as well as claims for intercompany receivables and those

5  matters specified in the Settlement Agreement.

6  1.      <u>The Settlement Meets The Standard For Approval</u>

7  Preliminary approval of a class action settlement is appropriate "[i]f (1) the proposed

8  settlement appears to be the product of serious, informed, noncollusive negotiations, (2) has no

9  obvious deficiencies, (3) does not improperly grant preferential treatment to class representatives or

10 segments of the class, and (4) falls within the range of possible approval . . . ." <u>In re Tableware

11 Antitrust Litig.</u>, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  Here, these factors are met.

12 (a)      *The Settlement Is The Product Of Serious, Informed, Non-Collusive*

13 *Negotiations*

14 The Settlement Agreement is the result of more than a year of intense negotiations between

15 the Plaintiffs and the Defendants.  Lee Decl. ¶ 8.  These negotiations were informed by counsel's

16 extensive investigation into the Defendants' finances. Both sides were zealously represented by

17 firms that expended considerable time and resources in attempting to obtain the best available

18 resolution for their clients.  This factor supports preliminary approval.  *See* <u>Vasquez v. Coast Valley

19 Roofing, Inc.</u>, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (where settlement was the result of

20 arm's length negotiation after significant investigation preliminary approval was appropriate); <u>In re

21 Katrina Canal Breaches Consol. Litig.</u>, 263 F.R.D. 340, 362 (E.D. La. 2009).

22 (b)      *The Settlement Has No Obvious Deficiencies*

23 Under the Settlement Agreement all insurance proceeds available to Defendants will be

24 contributed to the Settlement. In addition, if any of Defendants' remaining holdings should have

25 positive value in the future, a portion of that value will be paid to the Plaintiffs and the Debtors'

26 estates.

27 Settlement proceeds will be shared by the bankruptcy estate and the Class members

28 according to an allocation that was the result of extensive negotiations between Plaintiffs' counsel

and the Trustee. Each Class member's share will be determined according to a matrix that is based on his/her percent interest in the Debtor Funds, and that was previously approved by this court in connection with the Plan of reorganization in the underlying bankruptcy case. There are no obvious defects preventing approval. *See* Vasquez, 670 F. Supp. 2d at 1125.

(c) *The Settlement Does Not Improperly Grant Preferential Treatment*

The Settlement obtains the best result for the Class members overall, without any preferential treatment to Class representatives or segments of the Class. The Named Plaintiffs are treated exactly the same as all other Class members.

(d) *The Settlement Falls Within The Range Of Possible Approval*

To determine whether the Settlement "falls within the range of possible approval" the Court looks to its "substantive fairness and adequacy" and "plaintiffs' expected recovery balanced against the value of the settlement offer." In re Tableware, 484 F. Supp. 2d at 1080.

(i) Expected Recovery Balanced Against Value Of Settlement Offer

Under the Settlement Agreement, Plaintiffs will recover all insurance proceeds available to the Defendants. Because the insurance policies are "wasting policies," and Defendants have negative net value at this time, protracted litigation almost certainly would not yield a better result. Rather, policy limits would be further depleted by defense expenses, and the Lloyd's coverage might disappear altogether if Lloyd's were successful in its coverage litigation. Thus, unless Defendants' finances improved miraculously, *even a successful litigation outcome could not* result in recovery that is better than the proposed Settlement.[10] Against this background the possibility of adverse rulings – in response to Defendants' motion to dismiss the FAC, possible later summary adjudication motions, or at trial – seems almost an afterthought. But, of course, it must be considered, especially here where Defendants have filed two motions to dismiss and raised a long list of defenses, any one of which could significantly reduce the expected value of recovery.

---

[10] The difficulty of proving damages, in an environment of overall declining real property values, would be another negative factor even if Plaintiffs were successful on the merits.

(ii)     Fundamental Fairness And Reasonableness

In approving a settlement it is not the Court's role to conduct a trial on the merits or even to determine whether the settlement is the best possible. *See* <u>Officers for Justice</u>, 688 F.2d at 625. Because it is recognized that a settlement is inherently a compromise, the Court only determines whether the result is a fair and reasonable one.

> [T]he district court's role in intruding upon what is otherwise a private consensual agreement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned.

<u>Vasquez</u>, 670 F. Supp. 2d at 1124; *See also* <u>FDIC v. Alshuler</u>, 92 F.3d 1503, 1506 (9th Cir. 1996).

The Ninth Circuit has identified a number of factors that are relevant to the consideration of the fairness of a class action settlement.  These may include: "(1) the strength of the Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the stage of the proceedings; (7) the views and experience of counsel; (8) any opposition by class members; [and] (9) the presence of a governmental participant." <u>Vasquez</u>, 670 F. Supp. 2d at 1124 (citing <u>Linney v. Cellular Alaska Pshp.</u>, 151 F.3d 1234, 1242 (9th Cir. 1998); <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d at 1026.

The courts recognize that, in some cases, the most important matter is to secure a settlement, because available assets are limited and a delay would only reduce recoveries for the class. *See, e.g.*, <u>Torrisi v. Tucson Electric Power Co.</u>, 8 F.3d 1370 (9th Cir. 1993) (approval of settlement was proper where failure of settlement could have "left little if anything for class members"); <u>In re Drexel Burnham Lambert Group, Inc.</u>, 960 F.2d 285 (2nd Cir. 1992) ,  (delay would only have depleted limited fund, decreasing recoveries).  That is the case here.[11]

---

[11] Plaintiffs are fully prepared to address all of the <u>Vasquez</u> factors at the Fairness Hearing.  At this stage in the proceedings we shall concentrate on the overwhelmingly important issue, the financial aspects of the Settlement.

In the <u>Torrisi</u> case, the court found that the financial condition of the defendant was the predominant factor. It was likely that the defendant would file for bankruptcy absent approval of the settlement. The defendant's only available asset consisted of insurance proceeds, which made up the entire settlement amount. *See* <u>Torrisi</u>, 8 F.3d at 1370, 1375. As was the case in <u>Torrisi</u>, the fact that CMRI and Choo have no available assets other than the insurance proceeds is the predominant factor here in establishing the reasonableness of the Settlement Agreement. Here, as in <u>Torrisi</u>, "the reality of the situation was that the settlement had to be negotiated based upon assets which could be called upon to fund it." *See* <u>Torrisi</u>, 8 F.3d at 1370.

A settlement must be negotiated based on available assets, and the uncertain and contingent possibility of a large future payoff to defendants "is not such an asset." *See* <u>Torrisi</u>, 8 F.3d at 1370. The chance that defendants' finances could improve in the future is not a basis for finding a settlement based on the defendant's present assets unreasonable. The settlement "is not to be judged against a hypothetical or speculative measure of what might have been achieved." <u>Linney v. Cellular Alaska Pshp.</u>, 151 F. 3d 1234, 1242 (9th Cir. 1998). On the other hand, the expectation of a future decrease in available funds, as in the case of a "wasting" insurance policy, is an important factor in rendering a settlement reasonable. *See* <u>In re Drexel</u>, 960 F.2d at 292-93 (approving settlement and noting that "[p]rolonging the negotiation process will increase Drexel's litigation costs, with a consequent decrease in the size of the Fund.")

C. **Authority Of Bankruptcy Court To Certify The Class**

It is proper for the bankruptcy court to oversee a class action where the class action has a direct connection to the bankruptcy case. *See* <u>Benchic v. Century Entertainment Corp.</u>, 25 B.R. 502, 505 (Bankr. S.D. Ohio 1982). In this case, the connection is obvious. The Class members all are members of the Debtor Funds in the bankruptcy case, and seek to recover losses that resulted from the mismanagement of the Debtor Funds by Defendants. In addition, the FAC includes derivative claims whose adjudication directly affects the bankruptcy estates and, therefore, is properly undertaken by this Court. <u>Sax v. World Wide Press, Inc.</u>, 809 F.2d 610, 613-14 (9th Cir. 1987); <u>In re Touch America Holdings, Inc. v. Greevey</u>, 40 B.R. 107 (Bankr. D. Del. 2009) (bankruptcy court jurisdiction exists where there is a close nexus to the bankruptcy proceeding).

In determining whether to certify a class action, the district court may not inquire into the merits of the class representatives' underlying claims. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974). The district court is required to take the substantive allegations of the complaint as true. In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation, 691 F.2d 1335, 1342 (9th Cir. 1982). To be eligible for treatment as a class action, the representative parties must satisfy all four elements of Federal Rule of Civil Procedure 23(a) and one of the elements of Federal Rule of Civil Procedure 23(b). Amchem Products, Inc. v. Windsor, 521 U.S. 591, 614 (1997).

1.      The Initial Requirements of Rule 23(a) For Class Certification Are Met

The proposed Class consists of

> every person who was a member in the CMR Mortgage Fund, LLC,
> CMR Mortgage Fund II, LLC  and/or CMR Mortgage Fund III, LLC
> as of April 30, 2008, or the successor in interest, if any, to such
> person.

It satisfies the "numerosity," "commonality," "typicality," and "adequacy of representation" elements of Rule 7023(a), which provides:

> one or more members of a class may sue . . . on behalf of [the class]
> only if (1) the class is so numerous that joinder of all members is
> impracticable, (2) there are questions of law or fact common to the
> class, (3) the claims or defenses of the [class representative] are
> typical of the claims or defenses of the class, and (4) the [class
> representative] will fairly and adequately protect the interests of the
> class.

Numerosity:  The proposed Class is comprised of approximately 1,300 Fund members holding 1,962 accounts in the three CMR Funds.  Much smaller numbers have routinely been considered adequate to justify class certification.  See Lockwood Motors v. General Motors Corp., 162 F.R.D. 569, 574 (D. Minn. 1995); In re Kirschner Medical Corp. Sec. Litigation, 139 F.R.D. 74, 78 (D. Md. 1991).  California law specifically authorizes class actions to allow members of domestic or foreign LLCs, such as the Debtor Funds, to enforce any claim common to members of the LLC.  Such actions are governed by the law generally applicable to class action, but the numerosity requirement specifically is waived for members of an LLC.  See Cal. Corp. Code §

Case: 10-03107   Doc# 32   Filed: 05/18/12   Entered: 05/18/12 18:48:38   Page 20 of 32

1     17500.  This provision further supports class certification here.

2          Commonality: The relevant questions of both law and fact in this case are virtually identical

3     for all Fund members.  All members' injuries stem from Defendants' management of,

4     representations regarding, and provision of services to, the Debtor Funds.  Indeed, the individual

5     state court plaintiffs have alleged facts and legal theories almost identical to those in the FAC.  The

6     main difference between Class members is the amount invested and lost by each.  It is well

7     established that the fact that individual damage claims may differ is of no import.  Hanlon, 150 F.3d

8     at 1019-20.

9          No timing issues differentiate the Class members' claims.  All members of the Debtor Funds

10    suffered losses as a result of their inability to withdraw their investments after early 2008.  Any

11    variations based on time of investment in the Funds do not defeat commonality, as long as there is a

12    common nucleus of fact and theory of recovery.  *See* Madison Assocs. v. Baldante (In re Madison

13    Assocs.), 183 B.R. 206, 216 (Bankr. C.D. Cal. 1995).  Rosario v. Livaditis, 963 F.2d 1013, 1017 (7th

14    Cir. 1992).

15         This Court previously approved substantive consolidation of all three Debtor Funds, finding

16    that treating the Funds collectively is appropriate due to the way Defendants managed them.  For the

17    same reason inclusion of members of the three Funds in one Class is appropriate.  The main

18    distinction between Class members based on the Fund(s) in which they invested will be as to the

19    amount of damages, which does not defeat commonality.  Hanlon, 150 F.3d at 1019-20.

20         Typicality: The claims of the Named Plaintiffs are typical of the Settlement Class as a whole.

21    They are individuals who invested money in the Funds, as are all Class members. *See* FAC, ¶¶ 3-6.

22    The Plaintiffs invested in all three Funds.  *See* FAC, ¶¶ 11-13.  They seek recovery of money lost as

23    a result of the mismanagement and breaches of contract and duty alleged in the FAC.  Their claims

24    are typical of those of the other members of the Funds since they are based on the same allegations

25    of mismanagement of the Funds, the same legal arguments, and arise out of common losses to the

26    Debtor Funds.  *See* In Re Madison Associates 183 B.R. at 216  (finding that typicality exists where

27    the named plaintiffs' claims arise from the events that give rise to the class claims).

28

1    <u>Adequacy of Representation</u>: The "adequacy of representation" prerequisite is met where the

2    class representatives have a sufficient stake in the outcome to ensure zealous advocacy and do not

3    have antagonistic or conflicting claims to other class members. <u>In re Victor Technologies Sec.</u>

4    <u>Litigation</u>, 102 F.R.D. 53, 62 (N.D. Cal. 1984). Where the representative's interests are the same or

5    similar to the other class members, adequacy of representation "is generally presumed" absent

6    contrary evidence from a party opposing certification. <u>Madison Associates</u>, 183 B.R. at 217.

7    The Named Plaintiffs and other Class members have a common interest in the recovery of

8    money to minimize the losses caused by Defendants' mismanagement. As such, the Plaintiffs'

9    interests are the same as those of other Fund members. The Named Plaintiffs have a sufficient stake

10    in the outcome, given their combined Fund shares of $2,360,190.99. *See* FAC, ¶ 46. Each Named

11    Plaintiff also is a member of the Committee, and has evidenced a significant degree of interest, and

12    actively monitored the treatment of Fund members, in this case. *See* FAC, ¶¶ 3-5.

13    Named Plaintiffs are represented by both McNutt Law Group LLP and Monika Pleyer Lee,

14    whom Named Plaintiffs propose as class counsel ("Proposed Class Counsel"). The Proposed Class

15    Counsel are well qualified to represent the Settlement Class zealously and competently, as

16    demonstrated by their extensive efforts of investigation and negotiation that have resulted in the

17    proposed Settlement. The Lee Declaration and the DECLARATION OF SCOTT MCNUTT IN SUPPORT OF

18    PLAINTIFFS' MOTION FOR CERTIFICATION OF CLASS AND FOR PRELIMINARY APPROVAL OF

19    SETTLEMENT (the "McNutt Declaration") set forth counsels' many years of experience in complex

20    civil litigation and other relevant pursuits. Proposed Class Counsel have demonstrated great

21    familiarity with the issues and extensive knowledge of the applicable law and procedures. Named

22    Plaintiffs submit that these qualifications are more than sufficient to show that the Proposed Class

23    Counsel fairly and competently represent the interests of the Class members.

24    2.    <u>Certification of a Class Under Rule 23(b)(1) is Appropriate</u>

25    Once the prerequisites of Rule 7023(a) are met, the Action also must satisfy Rule 7023(b).

26    Here, the relevant subdivision is Rule 7023(b)(1), under which certification is appropriate where:

27    The prosecution of separate actions by or against individual members of the class
    would create a risk of:

28

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Certification under Rule 7023(b)(1) creates a "mandatory class" from which no member may "opt out." It is like equity's "bill of peace," designed to protect plaintiffs and defendants from prejudice caused by the filing of multiple suits. In re Northern Dist. of California "Dalkon Shield" IUD Products Liability Litigation, 526 F. Supp. 887 (N.D. Cal. 1981).

This case meets the requirements of Rule 7023(b)(1) for two reasons. One is the presence of a "limited fund," which requires that all class members be bound to a common remedy lest some members of the class, through individual actions, exhaust the available resources of defendants and leave the majority of members without the opportunity for any recovery.

The second reason is that the Settlement has been achieved without a prior judicial determination of where to draw the line between individual and derivative claims, or how doing so would affect recovery under either type of claim.[12] Remedies for derivative claims inure to the Funds for the benefit of all members, not to any member individually. An individual Fund member *cannot* "opt out" of a settlement of derivative claims. The applicable Chapter 11 rules mandate that each individual Fund member's benefit from a "derivative" remedy be proportionate to his or her loss. Indeed, this Court previously approved a formula for compensating individual Fund members out of recoveries realized by the Debtors' estates. As explained below, certification of a mandatory class under subsection (B) of Rule 23(b)(1)[13] will ensure that the same equitable distribution scheme – designed, in the bankruptcy context, to deal with the debtor's "limited funds" in the face of claims

---

[12] In its October 5, 2010 Order Approving Confirmation of Equity Committee and Debtors Joint Plan of Reorganization Dated June 24, 2010, paragraph 6, this Court reserved, among others, the following issues for determination in this Action: "(i) whether it is properly filed as a class action; (ii) selection of the representative plaintiffs (as to derivative as well as any other claims) . . ." *See* Doc# 700.

[13] Plaintiffs believe that subsection (A) also applies, and reserve their rights to invoke it.

1  exceeding assets – applies to all settlement benefits received by the Class, regardless of whether the

2  benefits spring from derivative or individual claims.

3          3.      The Court Should Certify A Mandatory Limited Fund Class

4          The purpose of Rule 7023(b)(1)(B) is to address "situations where the judgment in a non-

5  class action for or against an individual member of the class, while not technically concluding the

6  other members, might do so as a practical matter."  Fed. R. Civ. P., Notes of Adversary committee

7  on 1966 Amendments ("Adv. Comm. Notes").  That is the situation here. Because there is a limited

8  fund to satisfy Fund members' claims, recovery by individual Fund members who succeed in

9  getting to judgment first would exhaust the available funds and leave other members with equally

10  meritorious claims without recourse.

11          In situations where numerous claims are made against a fund that is insufficient to satisfy all,

12  the Advisory Committee recognized that: "A class action by or against representative members to

13  settle the validity of the claims as a whole, or in groups, followed by separate proof of the amount of

14  each valid claim and proportionate distribution of the fund, meets the problem."  Adv. Comm. Notes

15  at 693.  This type of class action is commonly referred to as a "limited fund" case.  *See* Ortiz v.

16  Fibreboard, 527 U.S. 815, 834 (1999).  A "limited fund" class is a mandatory class.  No member of

17  the class may "opt out."  Rather, all are bound by the outcome that applies to the class because that

18  is the only way to achieve equitable results for all members of the class.

19          Ortiz identified three basic characteristics found in prior limited fund cases, which it held to

20  be requirements for certifying a class on a limited fund theory under Rule 23(b)(1)(B).  *First*, "the

21  totals of the aggregated liquidated claims and the fund available for satisfying them, set definitely at

22  their maximums, [must] demonstrate the inadequacy of the fund to pay all the claims."  Ortiz, 527

23  U.S. at 838.  *Second*, the whole of the inadequate fund must be "devoted to the overwhelming

24  claims."  Id. at 839.  *Third*, "the claims identified by a common theory of recovery [must be] treated

25  equitably among themselves."  Id. at 839.  All three criteria are met fully here.

26          (a)    *Defendants Have A Negative Net Worth And Insurance Proceeds Are Limited*

27          As explained *supra* at p. 6, defendant Choo currently has a negative net worth.  Extensive

28  investigation by Plaintiffs' counsel has revealed very few liquid assets in Choo's control, and no

1   assets that could be liquidated at this time to generate cash.  Since this Action was filed, Choo has

2   lost most of his real estate holdings to foreclosure. Choo is subject to personal guarantees for more

3   than $50 million, as well as a law suit seeking to enforce one of the guaranties. In addition, CMRI's

4   net worth is also negative.  The evidence on these points is compelling and undisputed.

5       Insurance proceeds represent Defendants' only liquid asset.  Where insurance proceeds are

6   subject to aggregate limits that fall short of the covered claims they present the quintessential

7   "limited fund." *See* Ortiz, 527 U.S. at 851.  Here, the two available policies have combined

8   aggregate limits of $8 million.  Both policies are "wasting" policies, *i.e.*, defense costs incurred by

9   Defendants reduce the amount remaining in the policies for payment of judgments and settlements.

10      Choo and CMRI have already spent close to $1.4 million of the $5 million limit of the Indian

11  Harbor policy on defense.  Thus, while Indian Harbor committed to make its entire $5 million limit

12  available, this amount has been significantly reduced by litigation costs. The other insurer, Lloyd's,

13  strongly asserted that its policy provides no coverage and instituted coverage litigation in the

14  District Court.  The parties were able to negotiate a compromise with Lloyd's under which Lloyd's

15  will contribute 85% of its $3 million policy limit to the settlement.[14]

16      The maximum possible amount of insurance proceeds has been brought into this Settlement.

17  If the Class is not certified, Defendants will simply continue to spend their policy limits to defend

18  against the multiple pending actions, and further reduce the available funds for settlement.  The

19  limited fund will become ever more limited, until it disappears.[15]

20          (b)   *The Limited Fund Is Insufficient To Satisfy All Claimants*

21      The total projected loss to the Class members could approach the full amount invested of

22  $186,000,000.  *See* Third Status Report.  The loss resulting from one significant property in Hawaii

23  ───────────────

[14] The Supreme Court recognized that it may be appropriate to take "settlement amount as good
24  evidence of the maximum available" under an insurance policy, where coverage is disputed.  *See*
    Ortiz, 527 U.S. at 852.

25  [15] Allowing individual lawsuits to continue does not even hold the promise of a few Class members
26  being made whole.  Choo and CMRI are not likely to allow their insurers to use up policy limits to
    settle with one or a hand full of claimants, because that would leave them without money to defend
27  against all other claims.  Only a settlement with all Fund members, which eliminates the need for
    further defense, can result in insurance funds being available for distribution to the Class.

28

Case: 10-03107   Doc# 32   Filed: 05/18/12   Entered: 05/18/12 18:48:08   Page 25 of
32

MPA ISO PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

1   alone was more than $43 million.  By any measure, the projected losses of Class members will

2   necessarily exceed the available funds.  *See* In re Katrina, 263 F.R.D. at 349 (basing a finding of a

3   limited fund on credible projections).

4        The first prong of the Ortiz test, that the fund be demonstrably insufficient to pay the

5   aggregate claims against it, is the "concept driving this type of suit."  Ortiz, 527 U.S. at 838.  This

6   insufficiency alone justifies "the limit on an early feast to avoid a later famine."  Id.  Where only a

7   limited fund is available, there will necessarily be a "scramble for precedence in payment" unless a

8   class is certified.   Id. at 839 (quoting Guffanti v. National Surety Co., 196 N.Y. 452 (N.Y. 1909)).

9   The Ninth Circuit has held that class certification should be granted on a limited fund basis where

10  separate suits on individual claims "necessarily will affect later claims."  Dalkon Shield, 693 F.2d at

11  852.  Rule 23(b)(1)(B) certification is appropriate where "the claims of all plaintiffs exceeded the

12  assets of the defendant and hence to allow any group of individuals to be fully compensated would

13  impair the rights of those not in court." Green v. Occidental Petroleum Corp., 541 F.2d 1335, 1340

14  (9th Cir. 1976).  That is the case here.

15              (c)    *The Fund Is Devoted Entirely To Paying The Claims*

16       The second prong, that the entire fund be devoted to paying the claims, requires that the

17  settlement not be framed in a way that protects some part of the available funds from recovery by

18  the plaintiffs.  *See* Ortiz, 527 U.S. at 839.  The basic principle is that the limited fund case must give

19  "the class as a whole the best deal."  It cannot "give a defendant a better deal than *seriatim* litigation

20  would have produced."  Id.

21       The appropriate measure of the Defendants' ability to contribute to the fund is their net

22  worth.  The courts evaluate the net worth of the defendants in determining whether there is a limited

23  fund, and whether the entire fund is being applied to the claims.  *See* Ortiz, 527 U.S. at 850-51, 859.

24  As discussed above, Choo and CMRI have negative net worth.  The only significant assets the

25  Defendants can contribute to the settlement are the insurance proceeds. These proceeds are being

26  applied to fund the Settlement Agreement to the extent available.

27

28

(d)    *The Claimants Are Treated Equitably Within The Proposed Class*

Finally, to satisfy the limited fund criteria the claimants identified by a common theory of recovery must be treated equitably. Ortiz identifies two basic equity issues: the class should be inclusive of all claimants with like claims, and the distributions to class members should be fair. Ortiz, 527 U.S. at 854.

There can be no question that the inclusiveness requirement is met.  All persons that are members of the Debtor Funds are included in the Class. Their claims are alike except for individual damages, and all claimants will receive distributions proportional to their damages.

(i)    Allocation Between Class And Debtors' Estates

Because the Plaintiffs have asserted both individual and derivative claims, and both types of claims are being settled,  the total net Settlement Fund will be divided between the Trustee, for the benefit of the Debtors' estates, and the Class members, at a 60/40 ratio.  Under long-established derivative claim principles, recovery of damages for derivative claims properly goes to the Funds for the benefit of all members, not the individual members directly.  Oakland Raiders v. National Football League, 131 Cal. App. 4th 621, 650-651 (Cal. App. 2005).

Exactly where the line between the two types of claims would be drawn if the issue were litigated, or how that would affect monetary recovery on the various claims, is not known.[16]  The only guidance to date has been the ruling by the arbitrator in the Stevens case, which confirms the existence of both types of claims.  The proposed 60/40 allocation between derivative and individual claims is the result of good faith arms' length negotiations between Class Counsel and the Trustee. *See* Lee Decl. ¶ 13.

(ii)    Allocation Within The Class

The portion of the Funds allocated to Class members will be distributed among Class members based on their participation in the Funds.  This method was previously put to the vote of members in the bankruptcy case, and approved by this Court. *See* Disclosure Statement, Exhibit G.

---

[16] Neither Defendants, nor the Debtor Funds or the Chapter 11 Trustee, have objected to the Plaintiffs' pursuit of all claims on both a derivative and class basis, and there has been neither briefing nor adjudication of which of their claims fall into which category.

This Distribution Schedule is a fair and equitable basis for allocating direct payments to the Class.

(iii)    Utilization Of Funds Allocated To The Estate

The Trustee will utilize the funds he receives in accordance with his duties under Chapter 11. The Settlement will ensure that the Trustee has funds sufficient to continue in that role and to arrange for the sale of estate assets at the best possible prices. This benefits all members equally because it is calculated to increase their proportionate recoveries from estate assets.

(e)    *The Bankruptcy Setting and the Fact That Plaintiffs' Claims Are Also Brought Under Rule 23.1 Support Certification of A Mandatory Class*

The Advisory Committee's Notes recognize that a typical Rule 23(b)(1)(B) situation is presented by an action charging a breach of trust by a fiduciary "'affecting the members of a large class' of beneficiaries, requiring an accounting or similar procedure 'to restore the subject of the trust.'" Ortiz, 527 U.S. at 834 (quoting Adv. Comm. Notes at 696). This is a "classic example of a Rule 23(b)(1)(B) action." In re Syncor Erisa Litigation, 227 F.R.D. 338, 346 (C.D. Cal. 2005).

In Syncor, the beneficiaries of a 401(k) plan subject to ERISA sought damages for losses caused by the plan managers' breach of fiduciary duty, which took the form of imprudent investments. In approving the certification of a Rule 23(b)(1)(B) class, the court noted that

> [t]he relief which Plaintiffs seek from Defendants would inure to the Plan as a whole. If the primary relief is to the Plan as a whole, then adjudication with respect to individual members of the class would "as a practical matter" alter the interest of other members of the class – if one plaintiff forces the Defendants to pay damages to the Plan, the benefit would affect everyone who has a right to disbursements from the Plan.

Id. at 346 (citation omitted); *See also* Hochstadt v. Boston Scientific Corp., 708 F. Supp. 2d 95 (D. Mass. 2010) (holding that Rule 23(b)(1)(B) was "clearly satisfied" given that the case involved an "ERISA §502(a)(2) claim brought on behalf of the Plan and alleging breaches of fiduciary duty on the part of Defendants that will, if true, be the same with respect to every class member.")

As in Hochstadt and In re Syncor, the breaches of fiduciary duty and mismanagement by Defendants alleged in the FAC are the same with respect to every Class member. Choo's and CMRI's mismanagement of the Debtor Funds, including their underwriting of imprudent loans that did not satisfy the Funds' investment criteria and their co-mingling of Fund assets, eventually led to

the Chapter 11 filings of all three Funds and decimated the value of all members' shares. Where individual losses are the result of diminution in stock value the resulting claims are held to be derivative. *See, e.g.,* Pareto v. FCIC, 139 F.3d 696, 699 (9th. Cir. 1998) Plaintiffs acknowledge this fact in the FAC which asserts derivative claims under Rule 23.1, and is brought "to recover damages incurred by members of the Debtor Funds arising out of Defendants' conduct alleged herein, regardless of whether such damages derive from injury to the Debtor Funds or are the result of individual injuries," *See* FAC, ¶¶ 6, 22.

Like the ERISA claims brought on behalf of a Plan, the derivative claims brought on behalf of the Debtor Funds, if adjudicated, would result in remedies that would, as a practical matter, alter the interests of all members of the Funds, since such remedies would go to the Funds. Oakland Raiders, 131 Cal. App. 4th at 650-51. Where an action is brought under Rule 23.1 to recover damages suffered by a company the individual shareholders *do not* have the right to "opt out." Rather, all shareholders are bound by the outcome. Powers v. Eichen, 229 F.3d 1249, 1255 (9th Cir. 2000) (citing Gottlieb v. Wiles, 11 F.3d 1004, 1011 (10th Cir. 1993)); Mertens v. Kaiser Steel Retirement Plan, 744 F. Supp. 917, 923 (N.D. Cal. 1990).

Here, the Plaintiffs are asserting claims for injuries to the Debtor Funds. The Trustee, as the representative of the Debtor Funds, is a party to the Settlement, and he will be making the decisions regarding the use and distribution of the estate's share of the Settlement funds. The Bankruptcy Code requires that all members receive the same treatment on account of their claims against the estate. See 11 U.S.C. §§ 524, 1123.

The proposed Settlement equally resolves the class and the derivative claims. To the extent the claims are derivative, "opt out" is not feasible; to the extent the claims are individual class claims, "opt out" would lead to inequitable results because the fund is limited. Rule 23(b)(1)(B), standing alone, fully supports certification of a non-opt out class. But, if there were any doubt, the presence of class *and* derivative claims, and the bankruptcy setting, would tip the scales in favor of a non-opt out class.

## IV. THE PROPOSED CLASS NOTICE SHOULD BE APPROVED

Plaintiffs seek an order finding that the proposed Class Notice provides adequate notice of the Settlement Agreement pursuant to both Rule 23 and 23.1.

### A. The Proposed Class Notice Will Provide Adequate Notice Of The Class Settlement To All Class Members

When approval of a settlement class is sought the Federal Rules require that notice must be provided "in a reasonable manner . . . to all class members who would be bound by a proposed settlement." Fed. R. Bankr. P. 7023(e)(1). For certification under Rule 23(b)(1)(B), the Rules provide that "the court may direct appropriate notice to the class." Fed. R. Bankr. P. 7023(c)(2)(A).

Federal courts have broad discretion to direct appropriate notice of settlement in class actions. *See* Gottlieb v. Wiles, 11 F.3d 1004, 1013 (10th Cir. 1993), *abrogated on other grounds*, Devlin v. Scardelletti, 536 U.S. 1 (2002). It is not required that the notice provide the precise details of the settlement, as long as it summarizes the terms, advises class members of their rights, and provides the time and location of the fairness hearing. *See* Dillard v. City of Foley, 926 F. Supp. 1053, 1059, 1063 (M.D. Ala. 1995). The proposed Class Notice, Exhibit A to the Settlement Agreement, Lee Decl. Exh. A (the "Class Notice"), fully complies with the requirements of Rule 23(e). Because the members of the proposed Settlement Class are known, and limited to the holders of the 1,962 accounts in the Funds, providing notice to all Class members is a fairly straightforward process. The Plaintiffs propose to mail the Class Notice to all members of the Settlement Class by First Class Mail, sent to the last known address of each Class member, as reflected in the records of the Chapter 11 Trustee, and to publish the Class Notice in San Francisco Chronicle and by electronic publication on www.businesswire.com.

The Plaintiffs request that the Court approve the notice to Class members set forth above.

### B. Notice Of The Settlement Should Be Approved Pursuant To Rule 23.1

Because this Action is both a class and derivative action, approval pursuant to Rule 23.1(c) is also required. Court approval of a derivative action requires notice to all "shareholders or members in the manner that the court orders." Fed. R. Bankr. P. 7023.1(c). Plaintiffs intend to seek approval of the Settlement Agreement pursuant to Rule 23.1 in conjunction with the final Fairness

Case: 10-03107   Doc# 32   Filed: 05/18/12   Entered: 05/18/12 18:43:38   Page 30 of 32

1  Hearing. The Class Notice serves to provide adequate notice to all members of the Debtor Funds
2  pursuant to Rule 23.1.

3  ## V.  THE COURT SHOULD ISSUE AN ORDER STAYING OTHER PROCEEDINGS
         PENDING THE FAIRNESS HEARING

4
5  The Settlement Agreement provides that the Plaintiffs will seek an order, pending the final
6  determination of the fairness, reasonableness, and adequacy of this Settlement Agreement, enjoining
7  all members of the Settlement Class from instituting, commencing, or prosecuting any action against
8  Defendants related to the estate and Class Released Claims, and staying all proceedings in the
9  Action, except those related to approval of this Settlement Agreement and the certification of the
10 Settlement Class.  Settlement Agreement, ¶ 2.1.  Such an order is appropriate to ensure that this
11 Court's rulings can be fully implemented and the Court's exercise of its jurisdiction is not frustrated
12 by a Class member attempting an "end run" around the Class Settlement.  The law in this Circuit
13 favors issuance of such an order.  *See* Hanlon, 150 F.3d 1011 at 1025.  Hanlon held that, where the
14 court had preliminarily approved a class settlement, it

> had the power to issue an injunction against continued state proceedings under the
> All Writs Act, 28 U.S.C. § 1651 ("[t]he All Writs Act ... empowers the federal courts
> to enjoin state proceedings that interfere, derogate, or conflict with federal
> judgments, orders, or settlements." Keith v. Volpe, 118 F.3d 1386, 1390 (9th
> Cir.1997)) and the Anti-Injunction Act, 28 U.S.C. § 2283 (a federal court may
> intervene and enjoin state court proceedings in three narrow circumstances, one of
> which includes when it is necessary to protect the court's jurisdiction). Although
> comity requires federal courts to exercise extreme caution in interfering with state
> litigation, federal courts have the power to do so when their jurisdiction is threatened.

21 Here, the Court has the additional authority under 11 U.S.C. § 105(a) to enjoin proceedings
22 that affect assets of the estate to the extent any member of the class alleges claims that are derivative
23 claims.  Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.), 502 F.3d
24 1086, 1094-95 (9th Cir.2007); In re Bernard L. Madoff Inv. Sec., LLC, 440 B.R. 423, 434 (Bankr.
25 S.D.N.Y. 2010).

26 / / /
27 / / /
28 / / /

**VI. CONCLUSION**

For all of the reasons stated above, the Plaintiffs respectfully request that this Court grant the Motion in its entirety.

Dated: May 18, 2012                    MCNUTT LAW GROUP LLP


                                       By: _____/s/ Shane J. Moses_____
                                              Shane J. Moses
                                              Attorneys for Plaintiffs

Dated: May 18, 2012                    LEE LAW OFFICES


                                       By: _____/s/ Monika P. Lee_____
                                              Monika P. Lee
                                              Attorneys for Plaintiffs